UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CLAUDIO ORELLANA,

                        Plaintiff,                  **OPINION AND ORDER**

         -against-                       23 Civ. 5315 (NSR) (AEK)

JOSE A. LOPEZ, JR. and BYRAM MASON
AND BUILDING SUPPLY CORP.,

                        Defendants.
-------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

       Plaintiff has filed a motion for spoliation sanctions pursuant to Rule 37(e) of the Federal Rules of Civil Procedure, contending that Defendants failed to preserve videos from February 27, 2023, the date of the accident that is the subject of this lawsuit, and also failed to preserve the metadata associated with those videos. ECF No. 86. Defendants have filed a cross-motion to strike the report of Robert Knudsen, a digital forensics expert retained by Plaintiff, which Plaintiff maintains was produced as a rebuttal to the report of Defendants' biomechanical expert, Dr. Lars Reinhart. ECF No. 96; *see* ECF No. 88-7 ("Knudsen Report"). In the course of briefing these motions, Plaintiff also moved to strike the declaration of William Jacob Green ("Green Decl."), *see* ECF No. 96-2, which was submitted as part of Defendants' opposition to the motion for spoliation sanctions, *see* ECF No. 98 ("Pl.'s Reply Mem.") at 17-20.

       For the reasons that follow, Plaintiff's motion for spoliation sanctions is DENIED, Plaintiff's motion to strike the Green Declaration is DENIED, and Defendants' cross-motion to strike the Knudsen Report is GRANTED.

**BACKGROUND**

Plaintiff commenced this action on June 22, 2023, asserting a claim of negligence stemming from an accident that occurred on February 27, 2023, in which a truck operated by Defendant Jose A. Lopez, Jr., and owned by Defendant Byram Mason and Building Supply Corp. ("Byram Mason"), backed up and came into contact with a truck operated by Plaintiff. *See generally* ECF No. 1.  On September 18, 2023, Defendants provided Plaintiff with two video clips of the incident, which had been captured by Byram Mason's security system, and then produced two longer video clips in a supplemental discovery response on May 9, 2024. *See, e.g.,* ECF No. 69 at 2.

The first time any issue relevant to the instant motions was raised with the Court was on August 16, 2024.  On that date, Plaintiff filed a letter in which he contended that Defendants had failed to produce the source materials referenced and relied upon by Dr. Reinhart in forming his opinions, and that these source materials were "relevant, vital and necessary to [Plaintiff's] rebuttal expert report . . . ."  ECF No. 52; *see also* ECF No. 65 at 2 (same).  This letter made no mention of any concern with Dr. Reinhart's reliance on the videos in his report, nor did Plaintiff raise any freestanding issue regarding the videos.

The first time that an issue regarding the videos was raised in writing was in a letter filed by Plaintiff on September 26, 2024.  ECF No. 69[1]; *see also* ECF No. 72 (October 14, 2024 letter motion filed by Plaintiff, which was virtually identical to the September 26, 2024 letter). Plaintiff maintained that Defendants should be precluded from introducing the videos as evidence, or having their experts rely on the videos in any way, because Defendants had never

---

[1] Plaintiff's counsel initially addressed the videos at a discovery conference on September 18, 2024, but instead of hearing argument at that time, the Court directed the parties to first meet and confer to see if they could resolve the issue on their own.  *See* ECF No. 69 at 2-3.

2

"authenticated" the videos during discovery. ECF No. 69 at 2-3. Plaintiff explained that both Dr. Reinhart and Defendants' medical expert, Dr. Andrew Casden, relied upon the videos in forming their opinions, and that Defendants showed the videos to Plaintiff's treating surgeon, Dr. Andrew Merola, at his deposition "and, over objection, asked him questions regarding same." *Id.* at 3. As detailed in the submission, Plaintiff's counsel sent the videos to a digital forensics company to determine whether the videos had been tampered with or edited. *Id.* Attached to Plaintiff's letter was an unsigned letter from Joseph Caruso, the CTO/CEO of Global Digital Forensics, to a paralegal at Plaintiff's counsel's law firm, stating that the videos produced in discovery were "exports from the security system," and that "[t]he only metadata" associated with the videos was "the date they were exported." ECF No. 69-2. The unsigned Caruso letter suggested that "there should be a way to export the video clips in a format that has the original metadata and has additional encoding that allows for tamper detection," and that if this was not possible, Global Digital Forensics "would want a forensic image of the DVR hard drive so that we can review the videos and any logs that may be on the DVR." *Id.*

The dispute regarding the videos was discussed at a discovery conference held on October 25, 2024, following which the Court issued an order directing, among other things, that:

> (3) By November 1, 2024, Defendants must inform Plaintiff whether the video of the incident still exists in, and can be extracted from, Defendants' security system. If not, then by November 8, 2024, Defendants must provide an affidavit to Plaintiff explaining how the video that has been produced in discovery was extracted, maintained, and produced.
>
> (4) By December 5, 2024, Plaintiff may either serve and file a motion for spoliation sanctions regarding the video of the incident, or inform the Court by letter that he has decided not to do so. If Plaintiff files a spoliation motion, then Defendants' opposition is to be served and filed by December 19, 2024.

3

ECF No. 79 ¶¶ 3-4; *see also* ECF No. 85 at 3-4 (explaining the Court's rationale for ordering Defendants to provide an affidavit).

In accordance with the Court's order, Defendants provided Plaintiff with a sworn declaration from Michael Luiso, dated November 8, 2024. *See* ECF No. 80-1 ("Luiso Decl."). Luiso, the President of Byram Mason, explained in his declaration that to preserve relevant video footage, two clips "were extracted from [Byram Mason's] security system and saved to Byram's computer system: a 2:28 clip from the 'Yard_Entrance' camera (which depicted the scene before, during, and after the event); and a 6:16 clip from the 'Main_Right' camera (which depicted Mr. Orellana loading supplies into his truck after the incident)." *Id.* ¶ 5. Luiso went on to say that he "personally viewed both the original footage and the extracted video clips and confirmed that they are identical." *Id.* He added that "[t]he extracted video clips were not modified or altered in any way." *Id.* On November 21, 2024, Plaintiff filed a motion to reopen fact discovery for the "limited purpose" of deposing Luiso. ECF No. 80. In the motion, Plaintiff asserted that depending upon Luiso's deposition testimony, Plaintiff might "also need time to retain an expert forensic video analyst, to receive his report [and disclose same], and then to, based thereupon, decide if we have grounds to file a spoliation motion." *Id.* at 2.

The Court denied Plaintiff's motion to reopen fact discovery, and additionally denied Plaintiff's request for an extension of the deadline to file his spoliation sanctions motion and potential future request for additional expert discovery. ECF No. 85. The deadline for Plaintiff's counsel to file a motion for spoliation sanctions regarding the subject videos, or inform the Court that Plaintiff would not be filing such a motion, thus remained December 5, 2024. *Id.* at 5.

Plaintiff filed his spoliation sanctions motion on December 5, 2024, and included the Knudsen Report, which is dated December 3, 2024, in support of the motion. *See* ECF No. 88

4

("Ronai Decl.") ¶ 7 & Ex. G.  According to Plaintiff, the Knudsen Report is one of two expert reports offered in rebuttal to the report produced by Dr. Reinhart; the second such report is from a biomechanical engineer (like Dr. Reinhart), "who will testify that [Dr.] Reinhart's methodology is flawed and that his opinions are incorrect from a biomechanical perspective." ECF No. 92 at 2.  In response to the filing of the spoliation sanctions motion, Defendants informed the Court of their intent to file a motion to strike the Knudsen Report as improper rebuttal evidence.  *See* ECF No. 90.  The Court thereafter ordered a consolidated briefing schedule on both the spoliation sanctions motion and the cross-motion to strike, ECF No. 93; in accordance with that schedule, both motions were fully briefed as of January 31, 2025.

## DISCUSSION

I.  **Motion for Spoliation Sanctions**

   A.   **Applicable Legal Standard**

"'Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Gilani v. Teneo, Inc.*, No. 22-169, 2022 WL 17817895, at *2 (2d Cir. Dec. 20, 2022) (summary order) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  "The party seeking discovery sanctions on the basis of spoliation must show by a preponderance of the evidence: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* (quotation marks omitted).  "A party seeking sanctions for spoliation has the burden of establishing the elements of a spoliation claim." *Leidig v. Buzzfeed, Inc.*, No. 16-cv-542 (VM) (GWG), 2017 WL

5

6512353, at *7 (S.D.N.Y. Dec. 19, 2017). "As a threshold matter, . . . spoliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been 'lost.'" *Id.* (citing Fed. R. Civ. P. 37(e)); *see also Khaldei v. Kaspiev*, 961 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) ("Inasmuch as the spoliation doctrine is predicated on evidence actually existing and being destroyed, we first examine what evidence [the plaintiff] asserts has been destroyed by [the defendant]." (cleaned up)), *aff'd*, 961 F. Supp. 2d 572 (S.D.N.Y. 2013). The imposition of spoliation sanctions therefore requires, in the first instance, a finding that the evidence in question was lost or destroyed.

In the case of electronically stored information ("ESI"), Rule 37(e) of the Federal Rules of Civil Procedure was amended in 2015 to provide that a court "may order measures no greater than necessary to cure" the prejudice to the requesting party if ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e)(1). The amended Rule 37(e) separately provides that certain sanctions—a presumption that "the lost information was unfavorable to the party"; an instruction to the jury that "it may or must presume the information was unfavorable to the party"; or a dismissal of the action or entry of default judgment—may be imposed, but "only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see Hoffer v. Tellone*, 128 F.4th 433, 437-38 (2d Cir. 2025).

  **B.**  **Analysis**

    **1.**  **The Court Will Consider the Green Declaration**

The first matter that the Court must address is Plaintiff's motion to have the Green Declaration stricken pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure. *See* Pl.'s

6

Reply Mem. at 17-20.  Rule 37(c)(1) provides that if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Courts recognize, however, that preclusion is a harsh remedy that should be imposed only in rare situations."  *Camacho v. Barrier Grp. Inc.*, No. 22-cv-1156 (AEK), 2024 WL 5200047, at *4 (S.D.N.Y. Dec. 23, 2024) (quotation marks omitted).  In deciding whether this evidence should be stricken, the Court considers "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness[]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (cleaned up).

Plaintiff does not expressly address these factors, but none of the factors support preclusion of the Green Declaration in connection with the motion for spoliation sanctions; indeed, Defendants' non-disclosure of Green as a potential witness at any earlier stage of the case was substantially justified.  First, the reason that Defendants did not previously disclose Green as a witness is that Green's participation in the litigation, and his subsequent declaration, only became necessary as a result of Plaintiff's belated decision to retain a digital forensics expert and file a spoliation sanctions motion.  There would have been no reason for Defendants to retain, let alone disclose, Green as a potential witness any earlier than they did.  Second, the evidence offered in the Green Declaration is very important to the Court's evaluation of Plaintiff's spoliation sanctions motion.  Third, Plaintiff has not demonstrated any prejudice as a result of having to respond to the Green Declaration—Knudsen submitted a responsive declaration to address points offered by Green, ECF No. 100, and the Court also will consider

7

that as part of its consideration of the motion.  Fourth, there has been no request for a continuance, nor is one necessary at this point in the litigation.  In sum, there is no basis for the Court to preclude the use of the Green Declaration, particularly given that the declaration provides important and relevant information that bears directly on the adjudication of this matter.  Accordingly, Plaintiff's application to strike the Green Declaration is DENIED.

### 2. Spoliation Sanctions Are Not Warranted

As explained above, before deciding the issue of spoliation sanctions, the Court must first evaluate whether the evidence in question has been lost or destroyed.  Plaintiff has failed to demonstrate that Defendants either lost or destroyed the video evidence and associated metadata in this case.

Luiso stated in his declaration that at some time after the February 27, 2023 accident, he

> reviewed the video camera system, and identified two security cameras that had captured footage pertaining to this matter . . . .  To preserve this video footage following this accident, two video clips were extracted from the security system and saved to Byram's computer system:  a 2:28 clip from the "Yard_Entrance" camera (which depicted the scene before, during, and after the event); and a 6:16 clip from the "Main_Right" camera (which depicted Mr. Orellana loading supplies into his truck after the incident).

Luiso Decl. ¶¶ 4-5.  Luiso added that he "personally viewed both the original footage and the extracted video clips and confirmed that they are identical.  The extracted video clips were not modified or altered in any way."  *Id.* ¶ 5.  Luiso also certified that "the video files that were exchanged in this case are the videos that were extracted from Byram's security camera system, and are true and accurate copies of the video footage that was captured by Byram's security camera system in the ordinary course of Byram's business."  *Id.* ¶ 6.

The Court noted, in its order denying Plaintiff's motion to reopen discovery after he received Luiso's declaration, that

> [d]espite the insinuation in Plaintiff's motion, there is no evidence whatsoever that the videos of the incident that have been produced were in any way altered. As Defendants have noted in both their opposition to the instant motion, in previous submissions to the Court, and in prior court appearances, Plaintiff was shown the videos at his deposition and confirmed that they accurately depicted the incident and what occurred before, during, and after it. ECF No. 81 at 2; *see also* ECF No. 77 at 2. Plaintiff has not disputed this assertion. Furthermore, as consistently noted by Defendants, Plaintiff had these videos for months before seeking any further discovery with respect to them.

ECF No. 85 at 2. The Court added that

> Plaintiff's counsel continues to vaguely invoke the term "metadata" in his effort to explain why he believes there to be some issue with the videos that have been produced. But counsel still has not described what types of "metadata" would shed any additional light on the evidence that has been provided in discovery . . . .

*Id.* at 3.

Now, in the context of his spoliation sanctions motion, Plaintiff offers the Knudsen Report, the main thrust of which is that the video clips "lack the pertinent metadata which would, among other things, show any edits or modifications which may have been made to the clips"; rather, Knudsen asserts that the only metadata found on both video clips "is the date they were encoded, which is the date they were exported." Knudsen Report at 1. And because, according to Knudsen, the video clips lack "the necessary and crucial metadata, we are unable to opine whether the video clips are accurate, or have been edited, tampered with, or modified . . . ." *Id.* Aside from the alleged lack of metadata, Knudsen's principal basis for questioning the videos is certain discrepancies between Plaintiff's deposition testimony and what is seen in the videos. *Id.* at 2. Knudsen also suggests that the time stamp on the videos "can be subject to alteration and

9

modification on an exported and modified file," and notes that "[e]xamination of the original device would allow confirmation of the current settings and how the time is set." *Id*.

But Knudsen's statements are substantially undermined by the Green Declaration. Green, who is also a digital forensics expert, explained that Byram Mason has an IC Realtime DVR-FLEX16E security system, and that "[t]o allow for uninterrupted operation of the system, video is recorded continuously and is routinely overwritten, on a first-in first-out (FIFO) basis." Green Decl. ¶ 6. He stated that exporting videos from the system in MP4 format, as was done here, "is the most common method used by law enforcement personnel, and by business owners, to save and preserve video clips before they are overwritten in the normal course of operations of a video system like this." *Id.* ¶ 8. Green added that "[p]articularly when the system is serving as an 'always on' security system that cannot feasibly be disabled to interrupt the routine overwriting process, exporting video clips in this fashion is the most appropriate and practical method of saving videos from the system." *Id.* Put simply, Green's declaration makes plain that the appropriate way to preserve and maintain video evidence from a security system like the one in use at Byram Mason is to extract the relevant videos in precisely the manner that Byram Mason extracted the videos here. Accordingly, there is no basis to conclude that the videos of the accident were lost or destroyed.

Furthermore, in contrast to Knudsen, Green confirmed that the extracted videos *do* contain metadata—including the resolution, video format, encoded frames per second, data rate, and aspect ratio—and noted that all of this metadata falls "within the normal parameters of the IC Realtime DVR-FLEX16E surveillance system software," and is "fully consistent with videos that would have been created by this security system." *Id.* ¶ 16; *see id.* ¶¶ 14-15 (listing the five types of metadata that each of the videos contains). According to Green, modification of the

10

videos—such as by slowing them down or speeding them up—"would be reflected in the frame rates and other metadata" that he found, and that "[o]ther than the file format, there is no meaningful difference between videos that are direct exports [*i.e.*, like the videos produced in discovery here] and 'the original source materials.'" *Id.* ¶¶ 16-17.  Notably, as Green highlighted, Knudsen "does not suggest that he actually sees anything suspicious, unusual, or concerning about these videos from a digital forensics perspective that suggest to him that they have, in fact, been modified, altered, or manipulated, or that they are anything other than direct exports from the IC Realtime DVR-FLEX16E surveillance system." *Id.* ¶ 18.  Indeed, Green concluded, based on his examination, that "[t]here is nothing about the extracted video clips that would suggest that they have been modified, altered, or manipulated in any way." *Id.* ¶ 19.  Thus, to the extent that Plaintiff insists that relevant metadata associated with these videos has been lost or destroyed, the Court finds no merit to this contention.

      Plaintiff's protestation in his reply brief that Green "*never* states that the videos contain the specific metadata that plaintiff contends is *gone*—the metadata which would, among other things, show any edits or modifications which may have been made to the clips," Pl.'s Reply Mem. at 19 (emphases in original) (cleaned up), rings hollow, particularly when Knudsen failed to even identify or acknowledge in his initial report the metadata identified by Green.  Neither the Knudsen Report nor his declaration submitted in response to the Green Declaration specify any metadata field or category that would have been available in some other version of the February 27, 2023 videos that is not available in the versions of the videos that were preserved and produced.  In his responsive declaration, Knudsen did not dispute that the metadata identified by Green existed, and made no plausible argument that this metadata would not allow

11

him to test whether the videos were altered. *See generally* ECF No. 100.[2] Knudsen did not assert that the frame rates of the videos identified by Green are inconsistent with either the action shown in the videos or the amount of time that is shown to have elapsed on the videos as reflected in the time stamps, nor did he state what the typical frame rate would be for a video taken by this type (or any type) of surveillance system. Instead, Knudsen stated only that "[b]ased on [his] review of the user manual for the IC Realtime DVR-FLEX16E, the frame rate can be set by the user of the system. Thus, to determine if the videos exchanged by Defendants had been slowed down or sped up, one would need to examine the original videos, and compare their frame rates." ECF No. 100 ¶ 6. But this comes across as both speculative—there is still no basis to suggest that there has been any alteration of the videos—and desperate. Faced with the reality that the videos produced in discovery actually do include metadata, Plaintiff is left to vaguely argue that the metadata cannot be accepted without reference to some other "original" standard, even though Knudsen never disputes Green's assertion that the method of extraction of these videos was the most common, appropriate, and practical method for preserving such evidence.

The only other argument offered by Plaintiff and Knudsen to support the contention that video evidence has been lost or destroyed—that the videos produced in discovery are inconsistent with certain portions of Plaintiff's deposition testimony regarding the accident—is also unavailing. At his deposition, *before* being shown the videos, when asked how fast Lopez's truck was going when it backed into his truck, Plaintiff responded that "[i]t was fast. More than

---

[2] While Plaintiff contends that "whether the space, time and speed of the videos was accurate[] became *vital*," Pl.'s Reply Mem. at 14 (emphasis in original), he provides no evidence, from Knudsen or otherwise, that the metadata cited by Green would not allow Plaintiff to test the accuracy of these aspects of the videos.

normally you go back." Ronai Decl. Ex. F ("Orellana Dep.") at 41:24-42:2. Plaintiff also testified that when Lopez exited his truck after the incident, "he had something in his hands and he flew it on top of the flatbed at that point." *Id.* at 47:17-19. Plaintiff notes that in contrast, in the video, Lopez's truck is moving "*very slowly* in reverse," and when Lopez exits his truck, "*he is not holding anything in his hands*." ECF No. 87 ("Pl.'s Mem.") at 3 (emphases in original). That said, however, later in the deposition, *after* being shown the video of the accident, Plaintiff was asked whether it "fairly and accurately depicts the incident that we've been talking about today," and Plaintiff responded, "[y]es." Orellana Dep. at 62:11-16.[3] Plaintiff also testified that the second video—a portion of which Plaintiff was also shown, and which captured what happened after the accident—"fairly and accurately depicted" Plaintiff's post-accident activities. *Id.* at 65:9-13.

At bottom, Plaintiff confirmed the accuracy of the videos. The fact that there are discrepancies between the videos and Plaintiff's deposition testimony from prior to viewing the videos does not substantiate the allegation that the videos were altered, or demonstrate that some "other" version of the videos was lost or destroyed. There are many possible explanations for the inconsistencies in Plaintiff's deposition testimony, perhaps the most logical of which is that viewing the videos refreshed Plaintiff's recollection as to aspects of the accident and its aftermath, which led him to confirm that the videos were fair and accurate depictions of the events at issue. Plaintiff's various arguments about Defendants' counsel's conduct of the deposition—including that Plaintiff was not shown the full videos, or that Plaintiff was not asked

---

[3] Remarkably, Plaintiff attempts to criticize Defendants' counsel's conduct of the deposition, sarcastically asserting that "[c]onveniently," counsel "did not question him further to clarify the discrepancies." Pl.'s Mem. at 3. This argument is meritless—Plaintiff's counsel was present for the deposition, and if he thought it was important to clarify some aspect of his client's testimony, he could have done so.

13

clarifying questions—are entirely unpersuasive. Plaintiff's counsel had access to the full videos prior to the deposition, and certainly could have shown the videos to his client to prepare him for deposition questioning. And to the extent Plaintiff's counsel believed that clarifying questions were necessary or important during the deposition, he was present at the deposition and could have asked those questions of his client.

In sum, Plaintiff's suggestion, without any evidentiary basis, that the videos have been altered—and therefore that ESI has been lost or destroyed—does nothing to establish spoliation of any video evidence. *See Khaldei*, 961 F. Supp. 2d at 570 ("because plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions"); *see also Gilani*, 2022 WL 17817895 at *2 ("The district court did not abuse its discretion by denying spoliation sanctions. [The plaintiff] failed to show that [the defendant] altered his performance evaluations."). Despite Plaintiff's strenuous attempts to discredit Luiso's sworn statements regarding the efforts undertaken to preserve and produce the video evidence, as well as the sworn statements in the Green Declaration regarding the propriety of the preservation of the videos, the existence of metadata related to the videos, and the lack of evidence of any alteration, the Court finds that Plaintiff has not carried his burden to establish that any ESI has been lost or destroyed. In light of Plaintiff's failure to satisfy the threshold requirement of demonstrating spoliation, the Court does not reach the issue of sanctions.

Accordingly, Plaintiff's motion for spoliation sanctions is DENIED.

## II. Cross-Motion to Strike the Knudsen Report

Defendants cross-move to strike the Knudsen Report as improper rebuttal evidence. Because the Knudsen Report is not, in fact, "rebuttal" evidence within the scope of the Federal Rules of Civil Procedure, Defendants' cross-motion to strike is GRANTED.

### A. Applicable Legal Standard

Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure requires an expert's initial report to include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The purpose of a rebuttal expert report is "solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii). "A rebuttal expert report is not the proper place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice." *Ebbert v. Nassau Cnty.*, No. 05-cv-5445 (FB) (AKT), 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) (quotation marks omitted). "Since the function of rebuttal evidence is to explain or rebut evidence offered by the other party, a rebuttal report is admissible only when it will explain, repel, counteract or disprove that evidence." *Brink's Global Servs. USA, Inc. v. Bonita Pearl Inc.*, No. 22-cv-6653 (PGG) (BCM), 2024 WL 4227760, at *5 (S.D.N.Y. Sept. 18, 2024) (cleaned up), *reconsideration denied*, 2024 WL 4467173 (S.D.N.Y. Oct. 10, 2024). "A district court has wide discretion in determining whether to permit evidence on rebuttal." *Id.* at *6 (quotation marks omitted).

### B. Analysis

Plaintiff attempts to frame Knudsen as a rebuttal expert, suggesting that the purpose of Knudsen's report and testimony would be to "contradict and rebut" Dr. Reinhart's expert opinions by explaining that "due to the spoliation of the original videos and/or their metadata, the

15

accuracy of the videos Reinhart heavily relied upon cannot be confirmed, thereby casting doubt upon his findings and conclusions." Pl.'s Reply Mem. at 21. But it is apparent from Plaintiff's submissions to the Court before filing his spoliation sanctions motion, as well as the actual spoliation sanctions motion, that the Knudsen Report is not intended to "explain, repel, counteract or disprove" Dr. Reinhart's opinions; rather, it is intended to challenge the authenticity of the videos in order to preclude their use in *any* fashion, whether in the testimony of Dr. Reinhart, Dr. Casden, Dr. Merola, or Plaintiff himself. Indeed, although Knudsen has allegedly been retained by Plaintiff as a rebuttal expert to provide a response to Dr. Reinhart's expert report, when Plaintiff received Dr. Reinhart's expert report on August 12, 2024, the only issue he raised at that time was that Defendants had failed to produce the source materials referenced and relied upon by Dr. Reinhart, not any issue at all about the videos or Dr. Reinhart's reliance upon the videos in formulating his opinions. Nor did Plaintiff allege at that time spoliation of the video evidence, or state that he would be retaining an expert to support his allegation of spoliation. Moreover, when Plaintiff first raised the issue of the authenticity of the videos, he sought to strike not only Dr. Reinhart's expert report, but also Dr. Casden's expert report, *see* ECF No. 72, making clear that the purpose of the Knudsen Report is not to "contradict and rebut" Dr. Reinhart's expert opinions specifically, but rather to provide support for Plaintiff's spoliation sanctions motion. And as is evident from Plaintiff's opposition to the cross-motion to strike, his entire basis for retaining Knudsen as an expert and providing his report is to bar the use of the video evidence: "[i]n fact, if [P]laintiff's within motion [for spoliation sanctions] is granted and defendants are precluded from using the video clips, [P]laintiff would not call Robert Knudsen to testify." Pl.'s Reply Mem. at 23.

16

Critically, as a substantive matter, Knudsen's opinions regarding the authenticity of the videos—based on his expertise in digital forensics—in no way explain or contradict Dr. Reinhart's opinions regarding whether the February 27, 2023 accident caused Plaintiff's claimed injuries. The supposed rebuttal report from Knudsen addresses Dr. Reinhart's report in only one paragraph: Knudsen states that Dr. Reinhart should not have relied on the videos in forming his opinions because "they were not demonstrated to be exact duplicates of the original source videos, and further, lack the necessary metadata to confirm their accuracy," and therefore Dr. Reinhart "cannot state [the videos] are accurate representations of what the videos depict for purposes of his analysis." Knudsen Report at 2. This is not nearly enough for the Knudsen Report to be considered "rebuttal" evidence. First, for all of the reasons discussed in Section I.B.2, *supra*, there was no basis for Dr. Reinhart to have questioned the accuracy of the videos. Second, it is apparent from the Knudsen Report that searching the videos for metadata to confirm their accuracy requires a completely different expertise from that of Dr. Reinhart—this is what prompted Defendants to submit the declaration from Green, another digital forensics expert, in response to the Knudsen Report. Third, the Knudsen Report in no way addresses or challenges Dr. Reinhart's expertise or his actual opinions, which speak to the issue of causation. Knudsen's limited engagement with Dr. Reinhart's report appears to stand in stark contrast to the other rebuttal report referenced in Plaintiff's submissions—a report from a biomechanical engineer (*i.e.*, the same specialty and expertise as Dr. Reinhart) who will testify about what he believes to be the flaws in Dr. Reinhart's opinions from a biomechanical perspective. *See* ECF No. 92 at 2. Though the Court has not had occasion to evaluate that other expert's report, the description of the report makes it seem like quintessential rebuttal evidence.

Knudsen's opinions are not rebuttal evidence—they are *new* opinions, presented for the first time in support of a *new* argument, *i.e.*, that Defendants spoliated the video evidence and should be barred from using the videos in any way. The Knudsen Report is therefore not proper "rebuttal" evidence. *Ebbert*, 2008 WL 4443238, at *13. Moreover, the use of the Knudsen Report to present this new argument is not substantially justified and does cause prejudice to Defendants. Plaintiff has had these videos since May 9, 2024, even before his own deposition, yet he inexplicably and unjustifiably failed to raise any issue concerning their alteration or spoliation until months later, and after they had been relied upon by Defendants' experts and used at the deposition of Plaintiff's treating surgeon. To allow this eleventh-hour introduction of a new legal and factual theory of the case would be inconsistent with the orderly and proper functioning of the discovery schedule, and undoubtedly would substantially prejudice Defendants.

Accordingly, Defendants' cross-motion to strike is GRANTED.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for spoliation sanctions (ECF No. 86) is DENIED, Plaintiff's motion to strike the Green Declaration is DENIED, and Defendants' cross-motion to strike the Knudsen Report (ECF No. 96) is GRANTED.

The parties are hereby directed to meet and confer about a schedule for the deposition of Plaintiff's rebuttal expert, if Defendants intend to take one, and to file a letter by no later than October 17, 2025, informing the Court of the agreed-upon date. If Defendants do not intend to

depose Plaintiff's rebuttal expert, they must notify this Court of that decision by no later than October 17, 2025.

Dated: September 24, 2025
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge